And we will take up Sanchez v. Los Angeles Department of Transportation. Recording stopped. Recording stopped. All right, you may proceed. Good afternoon, your honors, and may it please the court. My name is Mohamed Tansar, and I represent the appellant, Justin Sanchez. I'd like to reserve four minutes for rebuttal, if I may, and I can watch my time. This appeal challenges, in the words of Carpenter, the easy, cheap, and efficient collection of precise vehicular location data at a breadth and depth unlike anything this court has ever addressed. The city here is demanding maximally precise GPS coordinates, up to the inch of every single ride made by every single rider on every single street, made on every single shared micromobility device within the city of Los Angeles. Now, my client, Mr. Sanchez, has alleged, with specificity, how that warrantless dragnet is likely to reveal incredibly sensitive information about riders just like him, and how the city has not proffered any reasonable justification for the precise location collection that they're engaged in. Can I start on that last point? Sure. Because you make it, and your amici make it. I'm the city of Los Angeles, and I want to know where people have dropped these scooters on the sidewalk and in the road. And I want to know it in real time, because, you know, I don't want to personalize this. I'm a bicyclist. I run into them all the time. Pedestrians run into them all the time. So they want to know where they need to send out people to clear this stuff. Why isn't that a good... Put aside whether there's a constitutional violation. I want to get back to that. But you keep saying, they've got no reason to want to know this stuff. And it seems to me they've got an obvious reason to want to know this stuff. Well, I think the question, Judge Horowitz, is whether they need to know it at the granularity and at the precision and the sort of individualized manner that they're collecting it, right? So it's one thing to say, and the various amici point this out, it's one thing to say, look, we have these various regulatory interests, which we don't doubt. It's one thing to say, look, we want to know trends. We want to understand where people are dropping these off, where they're not, and kind of have a broader... Why aren't they entitled to know more than trends? Why aren't they entitled to know where some negligent person has left, negligent people have left four scooters in the middle of the sidewalk at 5 o'clock in the afternoon? They may well be entitled to know it, but the way that they're going about doing it here, collecting... But you wouldn't get that from aggregate data or anything but real-time data. Oh, no, you certainly might. I mean, we've alleged, right, plausibly, they don't challenge this, there are various ways of getting, even accumulating sort of relevant and precise information about habits without all of the individualized collection. Go ahead. What I was going to say is that the amicus briefs raise a number of different sort of aggregation and privacy-preserving mechanisms that can easily be used that will not have a disparate privacy impact. Even if I take your point that it could have been done better, the first issue is whether or not there's a Fourth Amendment search, right? And what concerns me about your side of the argument is, unlike the people in Carpenter who, like me, carry around their cell phones all day not knowing that their location is being tracked, your client enters into a transaction which requires him to disclose to a third party his locations during the transaction. Right. Why doesn't that get us out of Carpenter land and back into Miller land? Yeah, so a couple points. So first, the ruling in Carpenter didn't differentiate between the times in which we use our device knowingly providing GPS data and collecting GPS data. No, but the ruling in Carpenter was expressly limited. It said, our ruling today is a narrow one. We don't question the continued application of what I would call the third party doctrine. Well, so here's what I'd say about that. A couple of points, Your Honor, and I think this is really important for the purposes of understanding our third party doctrine analysis. Carpenter majority specifically says that its holding applies to people's digitally collected physical locations and movements. And you read it as meaning all. In the whole of their physical locations. In any transaction. Not necessarily. So if I sign on to Uber or Lyft, and I say I want to go from point A to point B, and I voluntarily disclose that to Uber and Lyft, do you think that's in Carpenter land? So I think that what we have here is, it's not just one individual ride or two individual rides. There's a breadth. No, but see, now I'm asking a different question. I'm asking about your client's voluntary disclosure of his information. This is not a class action yet. Right, right, right. Okay, so as to your client, didn't he voluntarily disclose to the scooter operators where he was going when? Yeah, he did, he did. But that, again, with respect to Carpenter, that doesn't end the analysis. Even Carpenter itself says, Carpenter says the knowing disclosure, the knowing sharing, is not the end all be all of whether the third party doctrine applies. There are other considerations. So now in Carpenter, at least with the cell phones, it's tracking me all day. Right. Your client is only being tracked for discrete trips. For all of his trips on these devices. Each of his discrete trips. Correct. Does that make a difference? In some ways it does, but in some ways it doesn't. Obviously the facts are not exactly the same, but what we've alleged, plausibly, they don't challenge the actual sensitivity of the information that they collect. What we've alleged is that when individuals like Mr. Sanchez use these devices to travel to work, to travel home, to shop, to frequent, they're building the digital crumbs of information that can reveal really sensitive information about them. This is important, so let me take you to this point, because it's the one that troubles me. Would you agree that if this information never went anywhere, except into the LDOT archives, there would be no Fourth Amendment violation? No, I disagree with that. So you think that there has been a Fourth Amendment violation merely by the collection of this information? Yes, absolutely. So it doesn't really matter if they put it in what Al Gore once called a lockbox and nobody ever got to see it. You'd still think there was a Fourth Amendment violation. And so does the violation occur when L.A. gets the compelled collection from the third party? It does. Okay, but on that point, the city has made a choice as to the easiest and most convenient way to get information. Get it from the party that has to collect it in order to do its own transactions, and then require the provision of it as a condition of operation. So we know that the operator of the company is going to be getting this information, and your client isn't troubled by giving it to that operator. It is the compelled transfer to the city, even absent any evidence that the city is sharing it with law enforcement, doing anything to try to get behind the data, to associate it with any individual, to put together a single scooter's various trips over the course of any time period. That's right. Without anything like that, the mere fact of compelled collection from the third party is enough. That's right. And this point is important, because I think this Court can actually dismiss this question of analysis, collection versus analysis out of hand because of all the cases that are relevant here. So on their theory, the government can collect, for instance— My Amazon data. Not just your Amazon data. Let's be a little bit more Orwellian. They can collect your DNA. Not just your DNA. All of our DNA is stored in a refrigerator in the basement of City Hall, and that wouldn't be a Fourth Amendment problem. Actually, it surely would, because there we have a physical search. So we're trying to figure out whether we have a search here. Well, sure. There's a difference between a physical search and collecting digitally. I feel in the digital age, I'm not sure that distinction really matters all too much. I suppose you could say they could get it from my DNA or 23DNA. The point being, on their theory, just DNA, even Carpenter, they can store all cell site location information in a server somewhere and just leave it there. And that's not a Fourth Amendment violation. It's only when they go in and actually open the refrigerator or query the data that a warrant is required. That's not actually what Carpenter— On your theory, doesn't it require that the city also have the ability to de-anonymize the data? And how much effort it requires to get to that point? Right. It does. And we've alleged that it requires not very much effort at all. But you said collecting the data by itself is the violation. And we all agree the data is anonymous when collected. We all agree that the data is anonymous. Yes, we do. In other words, they can't take the data they collected and just look at that data and say it was Judge Wardlaw driving the scooter. Actually, let me be a little bit more precise. That is possible. We actually have alleged that a data set only of otherwise quote-unquote anonymous location data at the precision that it's collected here can, in fact, reveal people's identities. It can reveal information from which an identity could be discerned. In other words, if something leaves a certain house every day, you might be able to discern that the owner of the house— I have a scooter from my house to the courthouse every day. Right. But I want to be clear. No one looking at this information, just looking at this information within the four corners of it, can determine who the user of the scooter was. It's possible. I guess that's what we've alleged. No, you haven't alleged that. You've alleged that the information can be easily de-anonymized, a word that somebody apparently made up. Right. So that's why I'm trying to figure out what de-anonymized means. And what I read your pleadings to say, and I think they fairly say, is look, once somebody gets this information, then putting some effort together with some other information, you could identify the driver. Right, right, right. But you can't identify the driver solely from this information. Yes, I think that may be possible. You didn't allege that, did you? The thing is, I'm not sure that we need to allege it. You may not. Yeah, yeah, yeah. I understand. Every answer is not fatal. I'm just trying to figure out. I understand. Can I assume for purposes of this that the MDA information, by and of itself, does not identify the driver? Because you don't allege that. If you did, I think it would be a much stronger case. And I'm sure you would have had you been able to. The problem is, I think we've alleged research indicates that that's possible. We just don't know. Well, the reg doesn't call for it. The reg only calls for the trip. The reg doesn't call for the credit card information or anything else. Just send us. Right, right. But what we've said is that we don't allege that. It's difficult for us to allege it, not having seen the data. But what we do know is that it's very easy, based on this research, to get there. Thanks. That leads to the next question, which we've both been trying to get to. Does it matter that it's – if you've – let's assume you've obtained information about which, just for purposes of my question, I don't have an expectation of privacy because I've given it to a third party. Okay? Does it – but that information could be misused by government, by others. It can be used to identify what I was doing. Is the violation the first step or the second step? In your hypothetical, there wasn't a reasonable expectation of privacy? There was not. So let's assume – Yeah, I think if there is not a reasonable expectation of privacy in the first instance – In the first instance. – then I'm not sure – Then nothing that happens thereafter really matters? I think that that's right. Okay. I think that's right. So what we've alleged, and actually what Carpenter says, what Leaders of a Beautiful Struggle says, is that it's actually information – it's a search when you collect information, even when that information by itself can't pinpoint Mr. Carpenter to the location of the crime. In fact, that argument that they make here was explicitly rejected by the Supreme Court. They said it's that information, the information that is collected, in combination with other information that is the Fourth Amendment problem that makes the initial collection a violation. Same thing in Leaders of a Beautiful Struggle. In that case, the police would only know dots, literally pixels. But they used it to identify particular people. They could. And they could. And they did, didn't they? It was at a preliminary posture in Leaders of a Beautiful Struggle, so I don't think there was evidence of that. But that was clearly the intent of doing it. Correct. Right. So what we have said – And we don't have any evidence that that is the intent, the purpose. Well, the thing is, we don't have any evidence about any justification. We don't even have any allegation that that's the purpose. Correct. To go back to Judge Hurwitz's initial question, the problem here is we actually have in the record, in the allegations, we've alleged that they haven't provided any justification for precise data collection. Even when asked, they didn't. Now, they've come in after – My problem with the justification argument is that it seems to me to go to whether or not this is a reasonable administrative search, not whether it's a search. In other words, either it's a search or it's not, whether they've got a good reason or not shouldn't matter. Absolutely. Absolutely, right? So I understood your first question, Judge Hurwitz, to be about the reasonableness. But to go back to the search question, is there a reasonable expectation of privacy, we think the cases all lead in our favor. It's not just Carpenter. Carpenter talks about – instructs courts to show special solicitude for location information. But it's not just Carpenter. This court in Mowlin basically said that in the context of digital data collection, that the third-party doctrine is really – is outdated. And it lists various factors that we think all apply to demonstrate at least here – Right. In the face of Carpenter, we can't overrule that doctrine when they expressly distinguish it and say it's a lie. But I have a different question for you. This case was – there wasn't an answer file. This case was dismissed with prejudice. If we were to allow you to amend this complaint, what would you allege in addition that you think would make your claim stronger? The district court below made a series of assumptions about the sensitivity of the information and about the process that goes into de-anonymizing it that we think – that are all not contained in the allegation of the complaint. So to be clear, we think – we actually allege to the contrary sort of matters in opposition to what the district court assumed. The district court assumed that it would be a laborious process to do this. The district court assumed that the only thing you could learn from MBS data is where somebody travels to and from. We allege the opposite. The district court alleged that the data is itself anonymized, and we don't think there is a kind of anonymity question. But we can – all of those things we think we allege – that we think all of those assumptions that the district court made are actually contrary to our allegations in the complaint. So it's not a question of leave to amend. I'm sorry? It's not a question of leave to amend. It's a question of you've done enough already. I mean, we certainly think we've done enough. But I suppose on remand, we can go and sort of rebut those assumptions that the district court made, assumptions that we think we've adequately addressed in the original complaint. But in theory, we could do a little bit more. But I want to be clear that we think what the district court did with a lot of the allegations in our complaint. You know, for instance, the district court also said that people don't use scooters in the same way that they might use private cars. But we allege exactly the opposite. We say that our client uses scooters to go to work, to go home, to frequent, to shop, in a lot of the same ways that people might use cars. But it's a different scooter every time. It's a different scooter. And there's no predictability as to which scooter is going to be used by what person for what purpose or anything like that. That's certainly right. But that's not required in order to identify people, right? And so our allegation, an allegation that they actually don't contest, an allegation that the district court needed to take as true, is that you don't need an actual persistent scooter for every single person. That you can collect this information, you can reveal sensitive information about people, even in the absence of a person being designated that particular scooter or that particular scooter. What's the danger, the real-world danger about this surveillance? So the problem here is that, so we've alleged that these aren't just hypothetical concerns on the part of our clients, right? We've alleged, and there's evidence cited by the amici, that location data sets like this can actually do the harm that we're talking about here. They cite, for instance, a researcher that was able to find a student who left a conservative area, a high school in a conservative area, in the middle of the day to go to a Planned Parenthood clinic. There are allegations about the authorities in Austin using scooter data to track down a criminal suspect. There are allegations, there's research. But we don't have any allegations like that here, and we don't have any argument that if you were given leave to amend, you would have been able to plausibly allege that the city intends to share with law enforcement, intends to pinpoint individual data. Well, we don't actually have any allegations about anything. We have alleged that the city refused to provide a justification for precise data collection, right? They've come in after the fact and said, look, here are some documents. One was from last year. Yeah, well, forget the justification for a moment. Let's assume they don't have to justify their program to you. I'm sorry. Let's assume they don't have to justify their program to you. They could not respond to your request. What's important, Judge Rosenthal's question is, is there any allegation that either the city is misusing this information or there's a reasonable prospect that it will do so in the immediate future? I know, I take your allegations firmly established that this is information that could be misused. Right. But that's not what Judge Rosenthal asked. But that's absolutely right. So Judge Rosenthal, there are no allegations to that effect. But our position is that the Fourth Amendment doesn't require that, that if the government is going to engage in a warrantless data collection scheme just like this one that is possible from which to gather information that's deeply sensitive or secret about people, then that violates the Fourth Amendment. Just like in Kilo, when Justice Scalia said this kind of infrared camera technology may reveal an individual taking a shower or in a sauna, that's the problem. In a particular house. In a particular house. Right. In a particular house. The point there being they didn't need allegations of misuse. Right. They, all they required is that the technology is invasive and it's doing something that the Fourth Amendment, it's doing something the government could not have done in the absence of that technology. That's what's at stake here. The government could not collect en masse the kind of information that it's doing here in the absence of the technology that they're using. And there's ample evidence in the, we've alleged, and there's evidence in the amici, that this kind of data collection scheme can create a whole host of problems and reveal a whole host of sensitive information about people just like Mr. Sanchez. So I would like to reserve the balance of my time. Thank you. You're over your time. I'll give you a couple minutes. Thank you. May it please the Court. Mr. Sanchez is asking the Court to hold that his Fourth Amendment rights are plausibly violated if analyzing data about the location of someone else's scooter in a public right of way might disclose private facts about him with no allegation that anybody has ever performed the analysis or will perform the analysis. Is that relevant to the Fourth Amendment? I think it is, Your Honor. If you look at the case that my friend is hammering over and over again, Carpenter, you start with a sui generis statement from the Supreme Court that as to cell phone location data, which is identifiable to the person, we're going to say that that data, despite being shared with a third party, is subject to a reasonable expectation of privacy and seeking it as a Fourth Amendment violation. Here, the data that's being collected is data about a scooter that belongs to someone else and has no association with Mr. Sanchez until someone does some analysis to associate it. Okay. So let's, this is not this case, so you don't have to tell me it's not this case. Let's assume that you were collecting not only the scooter location but the rental information, who the person was who rented it. Would that violate the Fourth Amendment? It might. Well, I know it might. That's why I asked the question. I want to know what your position is. Would it violate the Fourth Amendment? I think it would be, yeah, I would concede that if we collected the identity of the person in a dragnet fashion, then that would violate the Fourth Amendment. Okay, so they're saying you really are doing that because any idiot, at least for purposes of this complaint, they say, any reasonably adept person could take this information and quickly determine who the person was. Assume that we have to take that allegation as true for the moment. Why doesn't that make it a search? I think the problem with taking that allegation as true is if you get into a world where you're asking on a set of public facts or facts that are not reasonably private, what private information might someone deduce? You're going to have a real problem separating and drawing a line. No, I can draw the line easily. I'm not sure that they're correct. But let's assume you've collected public facts for the moment. But someone can easily take those facts and use them to identify the person, whether the police department getting the information because they want to find out who went from point A to point B on a certain day or somebody else. Just assume that to be true for a moment. Is that a Fourth Amendment violation, or is it not? Because when the facts were collected, they themselves didn't identify the person. I think the latter fact has to be true, otherwise you get into the problem, I think, as Oren Kerr wrote in his article, of separating good police work from Fourth Amendment intrusions. When you have a case of just looking and seeing what public facts you might glean from someone and what you can deduce from those facts versus taking a fact that's private in the first instance. I don't think here, it seems to me that this is what the panel is picking up on, the fact of a scooter's location that doesn't carry with it any particular person's name is a private fact in the first instance. Would it matter if the scooter was rented to a particular person over a particular period of time? It might. I think the way to address a problem like that, and I think the danger with constitutionalizing this from the get-go, is you can't address the problem legislatively. California, at least, has been very active in this area. In the last two legislative sessions, there have been bills introduced specifically to address privacy of data involving these mobility devices. They haven't passed in either session. The Electronic Frontier Foundation, the council here, was a proponent of one of those bills. This gets to a point that was made by the Jones plurality and has been made by various justices. These kinds of things, jumping at this problem with a Fourth Amendment solution from the beginning, risks embarrassing the future. I think here, it risks embarrassing the present, frankly, because you have situations, for example, we can take it on both... Let's say you drive a car on toll roads, you have a toll transponder in your car, or you take a bus, you have a fare card. The privacy rights you have in these things are both regulated by statute in California. It's the Streets and Highways Code, section 31490. It's a big code. You know, when you use one of those things, there's personally identifying data about you that's being given to the government. Drive through the toll booth, they know who you are, they know you went through the toll booth. Scan your fare card to get on the bus, they know who you are, they know when you got on the bus and off the bus. That's just necessary to run those systems. Nobody makes a Fourth Amendment inquiry about it. The question is just, if anything, how you protect the privacy of the people who are using it. But what you're doing is not necessary to run the scooter system. It is necessary to control the city's public rights of way. At that level of granularity? So the level of granularity at which the city collects this data... to some degree is based on the level of granularity with which the scooter provider collects the data. They just sent it to the city. Whether it's true that that level of granularity always can provide... you can always know, let's say, whether the scooter was thrown in the canal or where it was always on the sidewalk. I'm not sure it matters, if it's at least sometimes useful for that. It should be enough under EARLS to say, well, look, the city doesn't have to have the least burdensome alternative. It can have a reasonable one. And I think it's reasonable to say, sometimes at least, if you know where these things are and you know they're not supposed to be there, you're allowed to collect that data to prevent them from being there. I'm not sure it's determinative of any of the questions, but I'm interested in the record on this. Am I right in reading the city's regulation as just not dealing with the issue of privacy? I don't think that's correct. Well, how does it protect the information collected through the MDA program from disclosure to third parties? So this is, I think, one of the disputes that we have over whether the court can properly recognize the city's policy in this matter. Well, I mean, the reg doesn't say anything about it, does it? In this case, it's a policy that the city adopted. I don't know that it's a regulation, per se. So there's a... No, but I mean, the policy, whatever it's called, the ordinance or the policy that gives rise to collection of the MDA data, just looking at that in its four corners... It does not. It authorizes... Doesn't. No, it authorizes the LADOT to collect the data. LADOT has a policy about what it does with the data. The dispute is about whether the policy is cognizable. So how can I tell from this record if the LAPD calls up the LADOT and says, give me all the records for the month of March? We got a hot case. Do you give them to them? So from the record, you cannot tell that. From the policy, you can tell that. Again, there's a dispute about whether the court can consider the policy. What I would say is, it doesn't make much sense for LAPD to say, give us all your scooter data for the month of whatever. If they can just go to the scooter company, subpoena, warrant, whatever... No, it makes a lot of sense, because to get it... To get it from the scooter company, they would need probable cause and have to go see a neutral magistrate. To get it from you, they just have to walk down the hallway and say, give it to me. And so in the one case, there's a search governed by the Fourth Amendment standards or whatever standards govern a subpoena. And in this case, there would be no standards if they voluntarily gave it over. So what they'd get, though, if they do that, is the same pile of public information. I guess now maybe we're talking... Well, see, that's my question. Is this public information? See, one of your arguments is, look, we just use it for this transportation purpose, and we've got it there, we don't know who you are. Is it public information? Could I go get it? You could not go get it, no. It's public in the sense that it's observed publicly. No, I understand. The movement is observed publicly. I'm talking about the data that's being... No, no, the data itself, again, I suppose, this will come down to a dispute between what they say you're allowed to recognize in this record and what you're not, but the data is not publicly available. It's not subject to CPRA requests. You cannot just go get this data. How can I tell that? So this is, again... I know, you've got a policy, but I don't know what a policy does for me. Is there a law or an ordinance that says that, or are you just saying, you know, it's my policy not to yell at my law clerks until I get angry, and then sometimes I forget my policy. I mean, so... It is just a policy that the record discloses that this has never been turned over to law enforcement. There is, in the record, who it's been requested by and who it's been disclosed to. It's never even been requested by law enforcement. There's a lot of argument in the briefs about whether there are adequate privacy protections or adequate care taken to the privacy interests of the riders. Is there any allegation in the pleading that there was an intent to or an instance of giving access to information that the city collects? I don't think there has been that allegation, no, in the pleadings. That there's been some kind of privacy breach or anything like that? No, I'm not aware of one. So the allegation is that this could be done. This could be done by de-anonymizing and then giving access to, sharing. That's the allegation, yes. Could you, or should you, or are you required to have better privacy protections? When you collect this kind of data, does the Fourth Amendment or California law require you to have a better set of privacy protections? I think getting to that question would require first an allegation that someone's privacy has been breached here. If you're just talking about the collection of public data, there's been no breach of anybody's privacy right. So before the court, this gets to the point I think I was trying to make earlier, gets into the question of what should the privacy policy be here? Your view is there's been no breach because it's public. It's information which they voluntarily turned over to. That's part of it. And it's not a search. They didn't voluntarily turn it over to the public. They gave it to the company that rents them the e-scooter. So I think that's one way in which there's no expectation of privacy here, the third-party doctrine. But I don't know that we necessarily have to get there. So what my friend is saying is that this information is private in the first instance under Carpenter because it's location information. I don't agree with that premise. Reading Carpenter and Jones together... Except don't you remember the teeny tiny little magistrate that Justice Alito was talking about in Jones? And he said it's not enough that you could tell where the car was all the time simply because somebody was following it. That doesn't take it out of Fourth Amendment land. But I should point out that these are... It's not the majority in Jones. The majority in Jones decided the case based explicitly on this trespass notion... Right, without getting into whether or not there was a reasonable expectation of privacy in the location of the vehicle. But at least four people seem to think there might be. Although those same four people, when you then move on to... I think it's the same four people... move on to Carpenter are dissenters. In that case, it's on the grounds that they think the third party doctrine prevents this material from being exposed. You can see why we're so confused. Yeah, or in Justice Gorsuch's case, that he doesn't think there's such a thing as a reasonable expectation of privacy. Can I go back to what your theory is? You think that because the public can see where the rider picks up the scooter and the public can maybe at various points in the ride see the rider riding, and then the public can see, some other of the public can see where the person stops, that the public, this is all publicly available? I recognize that that feels like it strains credulity, but that is my theory, and that's... But Jones didn't adopt that theory. But that's the Knotts theory that hasn't been rejected by Jones. Right, but Jones was argued on the notion that that was the controlling theory, and the Supreme Court... Dodged the bullet. Dodged the bullet and went to physical trespass. And then in Carpenter, it seemed to give at least some notion. After all, I can follow Judge Rosenthal around all day, and so can her cell phone company. And does. And does. But in Carpenter, the court didn't say, well, the fact that everybody can follow Judge Rosenthal around doesn't make it private. Of course, a scooter is not a cell phone. That's right, that's a separate issue. I don't need the scooter. I suppose my point is that the Carpenter and Jones courts are functionally the same court. The difference is the substitution of Justice Gorsuch for Justice Scalia. And when the court could have said in Jones, following a vehicle around... The reason I'm resisting your public disclosure argument is that it seems to me the way to read those cases reasonably is, look, the mere fact that you can be seen in public with it isn't always going to be enough. And Carpenter... Because if it were enough, no reason to come to a different theory in Carpenter. But Carpenter does... What concerns me and what I'm struggling in this case, Carpenter seems to say, look, we don't mean we're doing away with the third-party doctrine entirely. But, you know, these cell phones, everybody's got one and nobody's really voluntarily disclosing their information. So I'm not sure where the line is. I need your help in identifying where the line is between Carpenter and your case. Hopefully this answers your question. I think you start from the premise that the location of a vehicle is not protected. You may say under Carpenter then that it's possible that it could be. Except Carpenter is limited specifically to cell phones, as you pointed out before. Carpenter applies if I'm driving around in my car with a cell phone, doesn't it? It applies to the cell phone, not to the car. Okay, so let's assume my location when I'm using a vehicle can be protected under the Carpenter theory. My question is then, does that mean all the time, some of the time? What amount of the time? I think the only thing that Carpenter gets you in that case is the location of your cell phone. The court was very specific. It's limited to cell phones for the reasons that it gave. And otherwise, the third-party doctrine, I think this is where it comes in, that's where it has bite. If you're going to assume that the location data of your car or whatever it is is subject to a reasonable expectation of privacy, under Carpenter that's still – you then move to the question of does the third-party doctrine forego your privacy right, I suppose. So if I have a pacemaker that's easily traced because the medical requirements are that my doctor be able to tell all the time where I am and if I'm having an arrhythmia, and the city had some good reason to collect this information, not about me but just about where pacemaker recipients were from time to time because they had lots of ambulance calls, would that collection of information violate the Fourth Amendment? I think it might for the same reason that the cell phone information does, which is that in no sense can you be said to be giving your location voluntarily. I take it, I guess, that the – it seems to me your distinction is based on the notion that this is a quite voluntary transaction in the case of the scooter, but in the case of the cell phone, even though I don't have to carry it and I know that it's tracking me or the pacemaker, which I probably have to carry, I'm not really intending to let people know where I am. But in this one I am intending because they asked me to tell them where I was. Yeah, I think that is a distinction that can be drawn. I don't think it's my distinction. I think it's Carpenter's distinction. That's why they say that cell phones are so special, and they cite Riley for the point that people take them in the shower, all kinds of things that people do with cell phones that you don't do with scooters. But doesn't Mr. Sanchez allege, and this goes back to the pleading point, the use of the scooter was as essential to me to get around the city of L.A., which is roads dependent, has porous public transport. It's as essential to me as the cell phone is to the plaintiff in Carpenter. I'm not sure that that's an adjudicative fact here. Well, it's a pleading. So I think you could plead it, but I guess what I'm saying is that if the question is whether it's objectively reasonable, I mean anybody can say that something is essential. Well, is it entitled to a presumption of truthfulness? He can subjectively think that it's essential to him. I don't think that makes it objectively essential. But he doesn't have a car, and we know what L.A. I mean, I was downtown just two days ago and was amazed at how many scooters there were laying around everywhere, as well as how many people were riding them. And it did lend some credence to this pleading to say that probably to some people they need to use these scooters. I think the problem with taking that point and saying, ergo we're going to engage in a Fourth Amendment inquiry here, is the same problem that I was trying to point to before as regards toll transponders, bus fare cards. I mean, if you take the bus, taking the bus is probably an essential part of transportation. The city, or the county, depending on which bus you take, as a matter of administering that system, gets information about when you get on the bus, when you get off the bus. What is pleaded? Is it pleaded that it's essential? Does that make a difference to your defense if it's essential, I guess is my question. I mean, it seems to me that even if it's essential, it may be different than a cell phone. And so that's what I'm trying to figure out. Suppose there's gradations of essential. So gradations of essential and then essential for what? So I'll agree with you that it is different from a cell phone in the sense that the cell phone is both essential and something that is always following you around. This only measures discrete trips, where the cell phone measures my location 24-7. That's correct. What about the digital transactional equivalent, Amazon? We don't have an allegation that the government is taking my Amazon data. But my Amazon data reveals a great deal about me. And so let's assume that there was a government-compelled collection of that kind of data. Is Amazon essential to me? That may be a similar kind of argument. Essential to my convenience? Essential to my daily life and well-being like a cell phone? At what point do we, as judges, weigh the credibility or plausibility of those allegations? Not credibility, just plausibility. I'm going outside the record, obviously. No, I understand. So I'm trying my best to reckon with the question. I think the best way to resolve questions like that generally, and forgive me for getting back on this hobby horse, but is to say that you just don't collect that data. Don't collect person-identifiable data from Amazon. And the reason you don't is because if cities regularly started doing something like that, you would face a legislative backlash for doing it. There would be no reason to do it. The way to solve these problems is to handle them legislatively. See, my time is exhausted, so no further questions. Thank you. All right. Thank you, counsel. Mr. Tessar, I'll give you two minutes. Thank you, Judge Wardlaw. I've got four brief points. So my friend said that CSLI is not identified. I'm sorry, that this information is not ID'd to a person. Our principal allegation is that it is. Your principal allegation, and this is why I asked at the beginning, is that it easily can be. That's right. In other words, we're saying that you're, Judge Horwitz, you're hypothetical about, like, well, do they collect your name, and if they did, was that a Fourth Amendment violation? We're saying it's precisely that hypothetical that is our allegation, that it's functionally the same. See, that's why, and this is why this is an interesting case, and I don't want to quibble with you. Your allegation is because that would be a Fourth Amendment violation. This one in which they don't do that is also one. Right, or in other words, it's very easy to do it. So the second point is, my friend keeps talking about a public fact. There are five justices in Jones that said the long-term collection of vehicular GPS data constitutes a violation of a reasonable expectation of privacy. Is long-term the length of the surveillance or the duration of the collection and preservation? The length of the surveillance. In other words, they track, and so what we're saying here is they track everybody, collect every single ride in perpetuity. It's just as long-term. In fact, it's much more invasive because it's everybody. It's not just the targeted person. It's everybody. So there are five justices that rejected this idea that look, just because these scooters are in public, then you don't have a reasonable expectation of privacy. And indeed, it's that line of cases that led, it's Jones that led directly to Carpenter. Carpenter relies on Jones and says in every time, in multiple locations where the Supreme Court and Carpenter talk about cell site location information, they say, just like GPS coordinates, it's cheap, easy, and reliable. Just like GPS coordinates, it can do this and this and that. And they relied on Jones and that five justices who talked about long-term surveillance. The third point is they don't need, we've alleged that they don't need granular GPS data, individualized granular data. They say that, look, there's buses and these other things where this kind of information is routinely in the hands of public authorities. That may well be, and there may be reasonable reasons for why you might need individualized data to operate a bus or something along those lines. But we're alleging they don't need it in this context. And that allegation, they dispute it, but that allegation is entitled to deference. We're entitled to take that allegation as true, particularly where they blew the deadline to respond to the city council with precisely that fact. And I know you've gone over time, but I've been interested in this point since you raised it at the beginning. Let's assume they don't need it. Does that make it a search? No, it is a, we, no. No, so it's irrelevant. It's only relevant to the administrative search. Correct, correct. I'm only raising that if your honors say it's a search. If you say it's not a search, then it's irrelevant, right? You know, and I think at bottom, I guess what I'd like to close with here is that part of the recent history has taught us that the entire architecture of the sort of our digital lives here, like as we live them today, is mediated by third parties that collect all kinds of information about us, right? And we are just beginning to understand exactly how invasive and how revelatory all that information is. So when the amici talk about, for instance, how this kind of data can identify a member of the president's secret service detail, or how you can identify members of the military running around, doing their morning runs, or the layouts of military bases, what they're saying is that location information is uniquely sensitive, precisely because people move in patterns. Indeed, when people move to specific, when people move to specialized, when they travel to specialized locations like hospitals or protests, it's even more sensitive. Let me ask you, what level of granularity would you think was okay? So I think that's a difficult question, George Woldlaw. I think what we've alleged is that it's easy and simple to identify individuals and or their private habits and sensitive information about them. At some point, you can aggregate data, or at some point you could collect really coarse heat maps, for instance, of people's travel, in which case it would be very difficult to identify somebody going to a Planned Parenthood clinic, for instance. At that point, I'm not sure it would be a Fourth Amendment search. But I think on this record, they are asking for seven decimal places of clarity here. That's a centimeter, right? Now, whether or not the scooters themselves can provide that, their policy by design asks for it. But their policy only asks for what the scooter company has. It does, but the problem with their... They're not then taking that information and then making it more accurate. They're just taking whatever information the scooter company has, right? That's right, but the problem... What the Fourth Amendment says is if you have a leaky boat, you can't, as the government, come in and start creating other holes. You may not have an affirmative obligation to patch the holes that exist, but you can't create new holes. And what they're doing is they're creating new holes. They're saying that we have a leaky boat here because the companies collect this information and we can go out and create more holes. What we're saying is they cannot do that. No, I'm intrigued by your suggestion, if I may, that a solution is to hire a third-party intermediary. And that seemed to me to be not a principled answer to the problem that you're presenting. Judge Rosenthal, we don't have a particular prescription for them. All we're suggesting and all the amici suggest is there are loads of ways to do this kind of regulatory work without collecting en masse, individualized, precise location data. It could be through an intermediary. It could be through various mathematical tools that aggregate data. You could ping the devices, not the rides. The question is whether there's an obligation to follow a more tailored approach, which goes back to the search. What we have articulated and what the amici tell us is there are loads of options available to the city. We're not even asking for the least intrusive method. I think the case law requires at least something close to that. But we're saying there are all kinds of different ways to do this. But they've chosen to get everything. Everything that exists from the scooter companies, they want to collect it. What they want to do is figure out how to use it later and not tell us precisely in the first instance why they need it. The Fourth Amendment doesn't require that. They want credit for devising a novel, technologically savvy approach to regulation for a novel, technologically savvy method of transportation. But they don't want to be bound by the rules that govern technology.  that govern rotary phones. They want to be bound by the rules that govern paper instruments. But they can't have it both ways. If they're going to do this, if they're going to use technology to regulate people, they've got to be bound by the rules that govern technology. Thank you so much. Sanchez v. LADT is submitted and the session of the court is adjourned for today.
judges: WARDLAW, HURWITZ, Rosenthal